IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Petitioner, | : |
| v. | : No. CA-05-141-E |
| CATHERINE Y. PEI, a/k/a CATHERINE BYNUM, | : |
| Respondent. | : |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO ADJUDICATE CATHERINE Y. PEI IN CONTEMPT, AND FOR INCARCERATION**

The United States is seeking to enforce an Internal Revenue summons issued to respondent Catherine Y. Pei on February 20, 2004. As demonstrated through the declaration of Revenue Agent Shannon Dickerson, the summons is enforceable under United States v. Powell, 379 U.S. 48, 57-58 (1964). Following the hearing held on July 27, 2005, Pei agreed to meet with the Internal Revenue Service on August 31, 2005, but at that meeting, refused to produce any documents, invoking the Fifth Amendment. But the existence of Pei's Leadenhall credit card account has been established, and therefore the United States has established as a foregone conclusion that the summoned documents, exist, are authentic, and that Pei has, or can obtain, possession of the documents. See Norwood v. United States, 420 F.3d 888 (8th Cir. 2005), aff'g 2004 WL 1535579, 93 A.F.T.R.2d 2004-2584, 2004-2 USTC ¶ 50,303 (D.N.D. Mar 31, 2004). Accordingly, Pei's claim of the Fifth Amendment privilege is inappropriate, and she has otherwise failed to comply with the summons. Accordingly, this Court should find Pei in contempt of its order of August 16, 2005, and order her to provide testimony and produce the requested records forthwith. Moreover, the Court should issue appropriate sanctions against Pei, including, but not limited to incarceration and a fine until such time as she testifies fully and produces the documents.

STATEMENT OF FACTS

On May 11, 2005, the United States filed this proceeding against Catherine Pei seeking an order enforcing an IRS summons. The United States' petition was supported by the declaration of Revenue Agent Shannon Dickerson, employed in Wheaton, Maryland. The petition was further supported by a declaration of IRS Agent Barbara Kallenberg, and a declaration of Giksa Gonzalez (attached to the United States' Fed.R.Evid. 902(11) Notice).

Dickerson is assigned to examine the federal tax liabilities of Pei and her former spouse Robert Bynum ("the taxpayers"), and the purpose of the IRS' examination is to determine the taxpayers' correct taxable income for the tax years 1999 and 2000. (Dickerson Decl. ¶4; Petition ¶ 8.) The investigation of the taxpayers was initiated based on information gathered in the IRS's Offshore Credit Card Project – an on-going effort to identify persons who attempt to conceal taxable income by transferring funds to offshore jurisdictions and then use credit or payment cards to access these funds in the United States. (Dickerson Decl. ¶ 6; Petition ¶ 11.)

To date, the Service's investigation has revealed that during the years at issue, Pei owned, maintained and/or used a MasterCard credit card, Account No. 5482-82**-****-2511, issued by Leadenhall Trust Company, Ltd. (a/k/a Axxess International Bahamas, Ltd.) ("Leadenhall"), located in the Bahamas.[1] (Petition ¶11; Dickerson Decl. ¶7.) MasterCard credit cards issued by Leadenhall and used by non-Bahamian residents require the cardholder to maintain at least one bank account at Leadenhall, which is used to secure the credit card. The credit limit for the MasterCard credit card issued through Leadenhall is dependent on the amount of funds in the secured

---

[1]/The credit card account numbers are partially redacted to protect the privacy of the taxpayer.

account(s). This credit card enables the card holder to repatriate funds from the cardholder's Leadenhall bank account through, for example, credit card purchases. (Kallenberg Decl. ¶8; Petition ¶12.)

To gather additional information, Dickerson issued an Internal Revenue Service summons to Pei on February 20, 2004. The summons directed Pei to appear on March 22, 2004, for the purpose of giving testimony and producing for examination books, papers, records, or other data as described in said summons, including producing records pertaining to foreign bank or financial accounts. (Dickerson Decl. ¶9; Petition ¶ 12.) A copy of the summons is attached as Exhibit 9 to the declaration of Shannon Dickerson.

In accordance with 26 U.S.C. § 7603, on February 20, 2004, Dickerson served an attested copy of the summons on Pei by certified mail, as indicated on the certificate of service that is part of Exhibit 9. Additionally, Pei was personally served with a copy of the summons on February 25, 2004, when Internal Revenue Agent Grace Trocki left a copy of the summons posted to the door of Pei's residence. (Dickerson Decl. ¶10; Petition ¶ 15.)

The summons seeks relevant information which may shed light on Pei's correct tax liabilities for the tax years set forth in paragraph 8 above. Because Pei maintained an offshore MasterCard credit card through Leadenhall during some or all of the periods at issue, she may have transferred funds from the United States to a bank account that secured the offshore credit card, or generated funds offshore and deposited them into an offshore bank account that secured the MasterCard credit card. Moreover, because Pei owned and used a MasterCard credit card issued by Leadenhall, an offshore bank account may have been used to pay the charges to that credit card account. The Service needs to examine the nature, source and possible movement of

those funds to determine the correct tax liabilities of the taxpayer. (Dickerson Decl. ¶11; Kallenberg Decl. ¶8; Petition at ¶16.)

The records sought by the summons are not already in the possession of the Internal Revenue Service, except for those few documents identified in paragraph 18 of the petition and paragraph 14 of Shannon Dickerson's declaration. Moreover, all administrative procedural steps required by the Internal Revenue Code of 1986 (as amended) for the issuance of a summons have been taken. (Dickerson Decl. ¶ 15; Petition ¶ 20.) As of the date of this petition, no "Justice Department referral" is in effect with respect to the taxpayer. More specifically, no recommendation has been made by the Service to the Department of Justice for a grand jury investigation or criminal prosecution of the taxpayer for the years under investigation. Moreover, the Department of Justice has not made any request under 26 U.S.C. § 6103(h)(3)(B) for the disclosure of any return or return information (as those terms are defined in the Internal Revenue Code (26 U.S.C. § 6103(b)) relating to the taxpayer. See also 26 C.F.R. §§ 301.7602.1(c)(2)(i) and (ii). (Dickerson Decl. ¶ 5; Petition ¶ 9.)

Pei did not appear on March 22, 2004 in response to the summons. (Dickerson Decl. ¶¶12-13; Petition at ¶ 17.) Consequently, the United States filed its petition to enforce the summons, supported by the declarations of Shannon Dickerson, Barbara Kallenberg, and Giksa Gonzalez. On June 14, 2005, the Court issued an order to Pei requiring her to show cause why the IRS summons should not be enforced, by filing a response within 11 days, supported by appropriate affidavit(s). June 14, 2005 Order at 2-3. The procedure set forth in the Court's order was established by the Third Circuit. See United States v. McCarthy, 514 F.2d 368, 372-373 (3d Cir. 1975); United States v. Garden State National Bank, 607 F.2d 61, 70, 71 (3d Cir. 1979). Pei was personally served with the Order to Show Cause on June 23, 2005. (Decl. of Grace Trocki ¶2.)

In response to the petition, on June 27, 2005, Pei sent a letter to the Court generally expressing a willingness to comply with the summons, but denying that she currently possesses "personal and business Tax Returns, and any other records of events that occurred when I was married to Mark Bynum," including her bank account or MasterCard credit card account at Leadenhall Bank. (Pei Letter at p. 4.) In her response, Pei did not assert that she is unable to obtain these records, and merely objected to producing the records because her ex-husband had custody of the records and she did not wish to communicate with him in order to obtain them. (Pei Letter at p. 1.)

This Court held a hearing on the petition on July 27, 2005. At the hearing, Pei indicated that she would consent to appearing before the Service to answer questions and to produce documents demanded in the summons relating to any foreign credit card or bank account and which were not already in the possession of the Internal Revenue Service, but that she would invoke her Fifth Amendment privilege against self-incrimination on a question-by-question and document-by-document basis. Specifically, Pei agreed to appear, give testimony, and to produce documents regarding the following subjects:

> 5. All monthly statements, *which were not originally presented or previously inspected*, for bank or financial accounts at foreign banks, savings and loans, credit unions, or other financial institution, *under any name, over which you had signature or other authority or over which you exercised control*, either directly or through nominees, agents, powers of attorney, letters of direction, or any device whatsoever for the period December 1, 1998 through January 31, 2001. This would include any of the related corporate bank records, in which you exercised any control over. In addition, provide copies of all wire transfer authorizations; all deposit slips and cancelled checks, and check registers for each account. . . .

6. For any transfers of funds, during the year(s) 1999 & 2000, between all foreign bank or financial accounts over which you have signature or other authority, or over which you exercised control, either directly or through nominees, agents, powers of attorney, letters of direction, or any device whatsoever provide the following information. This would not include amounts that have already been identified from amounts transferred into the domestic accounts. Please provide the following:

   a) A list of such transfers.

   b) If you wrote a check from one account that was then deposited into another account provide a copy (front & back) of the cancelled check.

   c) If you wired the money from one account on which you had authority to another account for which you had authority, provide the wire transfer authorization including a copy of the bank statement of the account from which the money was transferred **and** the statement of the account to which the money was deposited showing this transaction.

   d) Copies of any advice, correspondence or other direction you may have communicated regarding the withdrawal and/or deposit.

10. List of all *foreign* credit/debit/charge cards, under any name, used by you to make purchases, cash withdrawals or advances or to pay expenses for any purpose, including personal or business use, during the year(s) 1999 & 2000. Include the name or company the card is issued to, the card account number and the name and address of the issuer of the credit/debit/charge card(s) and a copy of the application for card(s). In addition, provide all charge statements and charge receipts for all cards on such accounts for the year(s) 1999 & 2000. Also, provide all original agreements, opening documents, or application that was completed when account was opened. Provide any information relating to this and support the source of all payments made.

12. Provide a summary listing of any/all *foreign* investments that were held by each taxpayer, individually or jointly, during 1999 & 2000.

---

2/. References to specific pages of the Transcript of Pei's August 31, 2005 interview are referenced by page number and line number.  For example, 10:6 would refer to page 10, line 6 of the interview transcript.

of her passport (Tr. 22:12). Moreover, Pei refused to answer almost every question posed to her, including questions about her income and expenses during tax years 1999 and 2000 (Tr. 6:16 and 6:19), whether she continued to hold the Leadenhall credit card (Tr. 10:8), and her credit limit (Tr. 14:25); how she obtained the card, (Tr. 10:19), the name on the application (Tr. 11:25), her use of the card (Tr. 12:3), the payment of the charges on the account (Tr. 12:10), whether she had – and how she acquired – information about the credit card account (Tr. 12:19), her actions, if any, to obtain copies of documents pertaining to her account (Tr. 13:7), whether she received and/or reviewed the credit card statements (Tr. 14:1), whether she ever disputed charges (Tr. 14:7); the deposits into the account securing the credit card (Tr. 15:20), the source of the funds in the account securing the credit card (Tr. 15:25), the payments on the credit card account (Tr. 16:2), the location and account number of the bank account securing the credit card (Tr. 17:15), the dates on which the account was opened and closed (Tr. 19:6), and transfers to and from the bank account (Tr. 19:14).

## ARGUMENT

(1)   The summons is valid and enforceable, and Pei has not met her burden of establishing why she should not comply.

To demonstrate a prima facie case for enforcement of an internal revenue summons, the United States need only show: (1) that the summons was issued for a proper purpose; (2) that the information sought may be relevant to that purpose; (3) that the information being sought is not already in the possession of the Internal Revenue Service; and (4) that the administrative steps required by the Code with respect to the issuance and service of a summons have been followed. United States v. Powell, 379 U.S. at 57-58; United States v. Rockwell Int'l, 897 F.2d 1255, 1262 (3d Cir. 1990); United States v. Garden State Nat'l Bank, 607 F.2d at 67-68. By filing the petition and supporting declarations, the government established that the summons is enforceable under United States v. Powell, 379 U.S. at 57-58, and the burden shifts to Pei to establish

-8-

why the summons should not be enforced. United States v. Wheaton, 791 F. Supp. 103, 105 (D.N.J. 1992) (citing among other cases United States v. Powell, 379 U.S. at 58; United States v. Rockwell Int'l, 897 F.2d at 1262. "The party opposing an IRS summons must come forward with specific facts, under oath, from his or her own resources, demonstrating that a triable issue exists on a legally sufficient defense, in order to justify an evidentiary hearing." Johnson v. United States, 607 F. Supp. 347, 348 (E.D. Pa. 1985).

As indicated in the government's brief filed on July 7, 2005, Pei's letter response did not establish that she does not have custody or control over the summoned documents. The lack of physical possession of the documents is not a defense to enforcement of the summons, because Pei exercises some degree of control over the records. See United States v. Wheaton, 791 F. Supp. at 105; Kaggen v. IRS, 71 F.3d 1018, 1020 (2d Cir. 1995); United States v. Plath, 2003 WL 23138778 at * 3 (S.D. Fla. 2003); United States v. Hall, 2003 WL 23239979 at * 3, 4 (M.D. Fla. 2003), report & rec. adopted, 2003 WL 23241703 (M.D. Fla. 2003). "Control is defined not only as possession, but as the legal right to obtain documents requested upon demand." Searock v. Stripling, 736 F.2d 650, 653 (11th Cir. 1984); Alexander v. Federal Bureau of Investigation, 194 F.R.D. 301 (D.D.C. 2000); Prokosch v. Catalina Lighting, Inc., 193 F.R.D. 633, 636 (D. Minn. 2000). Pei has not offered any explanation as to why she has not or cannot obtain her records from Leadenhall bank – and the only explanation for why she has not demanded these records from her ex-husband is that she "did not want to be in contact with him." (Pei Letter at p. 1.)   Given this failure of proof to support her defense, Pei's conclusory denial is insufficient to preclude her compelled compliance with the summons at issue. See United States v. Huckaby, 776 F.2d 564, 567-69 (5th Cir. 1985) cert. denied, 475 U.S. 1085 (1986).

      (2)    Pei's Invocation of Her Fifth Amendment Privilege Is Not a Valid Defense to Producing the Summoned Documents.

At her meeting with Revenue Agent Dickerson on August 31, 2005, through her attorney, Pei refused to produce the summoned documents, claiming that the documents and the production thereof would violate her privilege against self-incrimination under the Fifth Amendment. (Transcript of August 31, 2005 interview, attached.) However, Pei's invocation of the privilege fails because she – and not her attorney – was required to assert the privilege. The privilege is a personal one. See United States v. Schmidt, 816 F.2d 1477, 1481 & n.3 (10th Cir. 1987) (IRS summons enforcement proceeding against taxpayer as sole proprietor; attorney's Fifth Amendment objection for taxpayer was improper) (citing Kastigar v. United States, 406 U.S. 441, 445 (1972)). See also Torres v. Kuzniasz, 936 F. Supp. 1201, 1211 (D.N.J. 1996); United States v. Haddad, 527 F.2d 537, 539 (6th Cir. 1975) (tax case). But even if Pei's invocation of the Fifth Amendment privilege was procedurally proper, it is an inappropriate defense in this case because: (1) the contents of the documents are not privileged; and (2) she has not demonstrated that the act of producing the documents creates a substantial likelihood of self-incrimination. We address each of the foregoing points below.

      A.    The Court Must Determine If the Fifth Amendment Objection Is Proper

The Fifth Amendment to the United States Constitution provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." "This protection applies only when the testimony furnished would incriminate the witness." In re Grand Jury Proceedings (Marsoner), 40 F.3d 959, 961 (9th Cir. 1994)(citing Doe v. United States, 487 U.S. 201, 207 (1988) (citing Fisher v. United States, 425 U.S. 391, 409 (1976)). "The protection also applies only to a communication that is of 'testimonial or

communicative nature.'" In re Grand Jury Proceedings, 40 F.3d at 961 (quoting Doe v. United States, 487 U.S. at 210). Accord United States v. Doe, 465 U.S. 605, 611 (1984).

 Preliminarily, a general assertion of a Fifth Amendment privilege to resist enforcement of an IRS summons is insufficient as a matter of law. See United States v. Raniere, 895 F. Supp. 699, 704 (D.N.J. 1995) (citing United States v. Allshouse, 622 F.2d 53, 56 (3d Cir. 1980) and ICC v. Gould, 629 F.2d 847, 861 (3d Cir. 1980)); United States v. Argomaniz, 925 F.2d 1349, 1356 (11th Cir. 1991). And it is for the Court, and not the taxpayer, to determine whether the Fifth Amendment privilege has been validly invoked. United States v. Argomaniz, 925 F.2d 1349, 1355 & n. 13.  "'The witness is not exonerated from answering [or producing documents] merely because he declares that in so doing he would incriminate himself--his say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified ....'" United States v. Fox, 721 F.2d 32, 40 (2d Cir. 1983), quoting Hoffman v. United States, 341 U.S. 479, 486 (1951)).

   B. As a Matter of Law, the Contents of the Documents Themselves Are Not Privileged.

 There is no Fifth Amendment privilege regarding the contents of a taxpayer's personal business records.  United States v. Doe, 465 U.S. at 611; Baltimore City Dep't of Social Services v. Bouknight, 493 U.S. 549, 555 (1990).  "[A] person may be required to produce specific documents even though they contain incriminating assertions of fact or belief because the creation of those documents was not "compelled" within the meaning of the privilege. *** It is clear, therefore, that respondent ... could not avoid compliance with the subpoena served on him merely because the demanded documents contained incriminating evidence, whether written by others or voluntarily prepared by himself." United States v. Hubbell, 530 U.S. 27, 35-36 (2000).  Accordingly, because the records sought in this case have been limited to previously created documents regarding Pei's

-11-

foreign credit card and bank account, and the use thereof during tax years 1999 and 2000, the contents of these records are not protected by the Fifth Amendment.

        C.    Pei Has Failed to Show That Producing the Documents Creates a Substantial Likelihood of Self-Incrimination.

A separate issue to be determined by the Court is whether the act of producing records might implicate the Fifth Amendment. United States v. Doe, 465 U.S. at 613-614. "[A]n individual may claim an act of production privilege to decline to produce documents, the contents of which are not privileged, where the act of production is, itself (1) compelled, (2) testimonial, and (3) incriminating." In re Three Grand Jury Subpoenas Duces Tecum, 191 F.3d 173, 178 (2d Cir. 1999) (citing United States v. Doe, 465 U.S. at 612-614)). "'[B]ecause the act of complying with [a] government [subpoena] testifies to the existence, possession, or authenticity of the things produced,' such production might implicate Fifth Amendment rights." United States v. McLaughlin, 126 F.3d 130, 133 (3d Cir. 1997) (citations omitted); accord United States v. Hubbell, 530 U.S. at 35-37.

Before an individual taxpayer may validly invoke the Fifth Amendment privilege, however, the taxpayer must show how producing any of the documents sought by the summons or subpoena would present a substantial likelihood of incrimination. See Hoffman v. United States, 341 U.S. 479, 486-87 (1951); Zicarelli v. N.J. State Comm'n Of Investigation, 406 U.S. 472, 478 (1972). Indeed, the likelihood of a criminal prosecution must be more than "merely trifling or imaginary." Marchetti v. United States, 390 U.S. 39, 53 (1968). The taxpayer must provide more "than mere speculative, generalized allegations of possible tax-related prosecution .... The taxpayer must be faced with substantial and real hazards of self-incrimination." United States v. Raniere, 895 F. Supp. at 704-705, quoting United States v. Argomaniz, 925 F.2d at 1353. Accordingly, "[w]hen the danger [of self-incrimination] is not readily apparent from the implications of the question asked or the circumstances surrounding the inquiry, the

-12-

burden of establishing its existence rests on the person claiming the privilege." <u>Estate of Fisher v. Commissioner</u>, 905 F.2d 645, 649 (2d Cir. 1990) (citations omitted).

Moreover, to the extent that the existence, possession, and authenticity of the documents are a foregone conclusion, no danger of self-incrimination is present. <u>United States v. Rue,</u> 819 F.2d 1488, 1492 (8th Cir. 1987) (quoting <u>Fisher v. United States</u>, 425 U.S. at 411); <u>see also</u> <u>Doe</u>, 465 U.S. at 614, n. 13. Under this exception the Supreme Court has recognized that the individual's act of producing the documents "adds little or nothing to the sum total of the Government's information" and his rights under the Fifth Amendment are not violated "because nothing he has said or done is deemed to be sufficiently testimonial for purposes of the privilege." <u>Fisher v. United States</u>, 425 U.S. at 411. In this instance, the Service is seeking records having to do with Pei's offshore credit card and related bank account maintained at Leadenhall Bank. The Service has already obtained statements regarding Pei's MasterCard credit card, Account No. 5482-82**-****-2511, issued by Leadenhall, during the periods at issue and signed credit card receipts bearing her signature during the same time period. Moreover, the Service has established that MasterCard credit cards issued by Leadenhall and used by non-Bahamian residents require the cardholder to maintain at least one bank account at Leadenhall which is used to secure the credit card. (Kallenberg Decl. ¶8; Petition ¶12.) Accordingly, at a minimum, the existence of Pei's foreign bank account is a foregone conclusion.

Earlier this year, the Eighth Circuit decided <u>Norwood v. United States</u>, affirming the District of North Dakota's holding that similar records involving Leadenhall Bank are not privileged. 420 F.3d 888 (8th Cir. 2005), <u>aff'g</u> 343 F. Supp. 2d 860(D.N.D. 2004). The Court stated:

> The existence of the requested records relating to Norwood's Leadenhall cards and account is a foregone conclusion. The summons seeks records such as account applications,

-13-

>periodic account statements, and charge receipts, all of which are possessed by the owners of financial accounts as a matter of course. Norwood does not contend that he does not possess any of these documents, and the government knows far more about the documents associated with Norwood's Leadenhall cards and account than it did about the defendant's business records in <u>Hubbell</u>, 530 U.S. at 44, 120 S.Ct. 2037. In <u>Hubbell</u>, the government could not show "*any* prior knowledge of either the existence or whereabouts" of the documents sought. <u>Id</u>. (emphasis added). Here, by contrast, the government knows the name and location of the bank that created the records sought, Norwood's payment card numbers, and even the details of a number of discrete transactions involving the cards and his Leadenhall account. Accordingly, the district court's conclusion that "Norwood's production of the records has no testimonial significance," (Add. at 4), is not clearly erroneous.

<u>Id.</u> at 895-96.

In the instant case, the Service is seeking the ***exact*** same types of records as in <u>Norwood</u> – credit card records detailing the use and payment of the taxpayers' Leadenhall credit card account, and the bank records regarding the account securing the credit card account.  Accordingly, as in <u>Norwood</u>, it is a foregone conclusion that these records exist, and that as account holder, Pei would have access to these accounts. Therefore, Pei's invocation of the Fifth Amendment privilege as to the act of production of the summoned records was improper.

        D.      <u>The Fifth Amendment Does Not Apply to Passports</u>

During her August 30, 2005 interview with Revenue Agent Dickerson, Pei admitted that she had a passport (Tr. 22:11), but she refused to produce it (Tr. 22:15). However, the Fifth Amendment only "protects against "compelled self-incrimination, not [the disclosure of] private information." <u>Fisher v. United States</u>, 425 U.S. at 401, <u>citing</u> <u>United States v. Nobles</u>, 422 U.S. 225, 233 n. 7 (1975).  As the Southern District of Florida explained:

>A passport is, at all times, the property of the United States Government. 22 C.F.R. § 51.9 states, in pertinent part: "A passport shall at all times remain the property of the United

> States government and shall be returned to the government upon demand." On this basis, this Court found in a 1982 case that a grand jury could subpoena a passport without infringing the Fifth Amendment rights against self-incrimination of the person compelled to produce the document. In re Grand Jury Subpoena Duces Tecum (Passports) Dated June 8, 1982, 544 F.Supp. 721 (S.D.Fla.1982). Because the passports remain government property, a Defendant has no reasonable expectation of privacy in them. See generally Illinois v. Lafayette, 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983); Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

United States v. Segall, 589 F. Supp 856, 858 (S.D. Fla. 1984). Accordingly, the Fifth Amendment does not product a passport, and the government can compel its production. See United States v. Anello, 765 F.2d 253, 260 (1st Cir. 1985); In re Grand Jury Subpoena Duces Tecum (Passports),544 F.Supp. 721, 725-26 (S.D. Fla., 1982); United States v. Praetorius, 622 F.2d 1054, 1062-63 (2d Cir. 1979)).

    (3)    Pei's Invocation of Her Fifth Amendment Privilege Is Not a Valid Defense to Producing the Summoned Documents.

To the extent that Pei refused to answer questions at the meeting pursuant to the Fifth Amendment, the privilege also fails. As discussed above, an objection based on the Fifth Amendment privilege must be grounded in a substantial likelihood of criminal prosecution, and it is the objector's burden to demonstrate a substantial likelihood of incrimination. See Hoffman v. United States, 341 U.S. at 486-87. "'The witness is not exonerated from answering [or producing documents] merely because he declares that in so doing he would incriminate himself--his say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified ....'" United States v. Fox, 721 F.2d at 40 (quoting Hoffman v. United States, 341 U.S. at 486). Taxpayers' bald assertions that if they answered any questions or produced any evidence, the information thereby revealed might be used against them "gave

> States government and shall be returned to the government upon demand." On this basis, this Court found in a 1982 case that a grand jury could subpoena a passport without infringing the Fifth Amendment rights against self-incrimination of the person compelled to produce the document. In re Grand Jury Subpoena Duces Tecum (Passports) Dated June 8, 1982, 544 F.Supp. 721 (S.D.Fla.1982). Because the passports remain government property, a Defendant has no reasonable expectation of privacy in them. See generally Illinois v. Lafayette, 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983); Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

United States v. Segall, 589 F. Supp 856, 858 (S.D. Fla. 1984). Accordingly, the Fifth Amendment does not product a passport, and the government can compel its production. See United States v. Anello, 765 F.2d 253, 260 (1st Cir. 1985); In re Grand Jury Subpoena Duces Tecum (Passports),544 F.Supp. 721, 725-26 (S.D. Fla., 1982); United States v. Praetorius, 622 F.2d 1054, 1062-63 (2d Cir. 1979)).

    (3)    Pei's Invocation of Her Fifth Amendment Privilege Is Not a Valid Defense to Producing the Summoned Documents.

To the extent that Pei refused to answer questions at the meeting pursuant to the Fifth Amendment, the privilege also fails. As discussed above, an objection based on the Fifth Amendment privilege must be grounded in a substantial likelihood of criminal prosecution, and it is the objector's burden to demonstrate a substantial likelihood of incrimination. See Hoffman v. United States, 341 U.S. at 486-87. "'The witness is not exonerated from answering [or producing documents] merely because he declares that in so doing he would incriminate himself--his say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified ....'" United States v. Fox, 721 F.2d at 40 (quoting Hoffman v. United States, 341 U.S. at 486). Taxpayers' bald assertions that if they answered any questions or produced any evidence, the information thereby revealed might be used against them "gave

absolutely no indication about the issues with respect to which they feared prosecution." <u>Steinbrecher v. Commissioner</u>, 712 F.2d 195, 197, 198 (5th Cir. 1983). Indeed, "It is for the trial judge to determine if silence is justified; a clamant's own 'say so' does not of itself establish the hazard of incrimination."<u>Davis v. Fendler</u>, 650 F.2d 1154, 1160 (9th Cir. 1981).

  At her interview, Pei refused to answer almost every question posed to her. She failed to answer simple questions about her income and expenses during tax years 1999 and 2000 (Tr. 6:16 and 6:19), whether she continued to hold the Leadenhall credit card (Tr. 10:8),and her credit limit (Tr. 14:25).  She also refused to answer other questions regarding the credit card, including how it was obtained, (Tr. 10:19), the name on the application (Tr. 11:25), her use of the card (Tr. 12:3), the payment of the charges on the account (Tr. 12:10), whether she had – and how she acquired – information about the credit card account (Tr. 12:19), her actions, if any, to obtain copies of documents pertaining to her account (Tr. 13:7), whether she received and/or reviewed the credit card statements (Tr. 14:1), and whether she ever disputed charges (Tr. 14:7).  Moreover, she invoked the Fifth Amendment in response to questions about deposits into the account securing the credit card (Tr. 15:20), the source of the funds in the account securing the credit card (Tr. 15:25), the payments on the credit card account (Tr. 16:2), the location and account number of the bank account securing the credit card (Tr. 17:15), the dates on which the account was opened and closed (Tr. 19:6), and transfers to and from the bank account (Tr. 19:14).   It is not clear from these questions what hazard of incrimination Pei was seeking to avoid.  Moreover, while a criminal investigation into tax years 1999 and 2000 is not completely out of the question, at this stage, the investigation is entirely civil in nature.  Accordingly, Pei's invocation of the privilege is inappropriate, and her refusal to answer the interview questions is in contempt of the August 16, 2005 order enforcing the summons.

CONCLUSION

Given the foregoing, the Court should determine that Pei's invocation of the Fifth Amendment privilege was inappropriate, and find her in contempt of its order enforcing the Internal Revenue Summons.

Dated: November 10, 2005.

Respectfully submitted,

MARY BETH BUCHANAN
United States Attorney

LEE J. KARL
Assistant United States Attorney

/s/ Dara B. Oliphant
DARA B. OLIPHANT
CHARLES M. FLESCH
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 227, Ben Franklin Station
Washington, D.C.  20044
Telephone:  (202) 616-9785
            (202) 307-6635