<pre>
 1                        SUMMONS HEARING

 2                         -  -  -  -

 3   UNITED STATES                    )
                                      )
 4                                    )
                                      )
 5            Plaintiff,              )
                                      )
 6              -vs-                  )    Civil Action
                                      )    No. 05-CV-141E
 7   CATHERINE Y. PEI                 )    (USDC W.D. Pa.)
                                      )
 8                                    )
                                      )
 9            Defendant.              )

10                                        CERTIFIED TRANSCRIPT

11                         -  -  -  -

12         DEPOSITION OF:  CATHERINE Y. PEI

13                         -  -  -  -

14
                  DATE:    August 31, 2005
15                         Wednesday, 10:00 a.m.

16
                LOCATION:  IRS Office
17                         1314 Griswald Plaza
                           Erie, PA
18

19              TAKEN BY:  Plaintiff
                           IRS
20
             REPORTED BY:  Cynthia A. Hawley
21                         Notary Public
                           AKF Reference No. CH89912
22

23

24

25
</pre>

1                        DEPOSITION OF CATHERINE Y. PEI,
  a witness, called by the Plaintiff, IRS, for
2 examination, in accordance with the Federal Rules of
  Civil Procedure, taken by and before Cynthia A.
3 Hawley, a Court Reporter and Notary Public in and for
  the Commonwealth of Pennsylvania, at the offices of
4 IRS 1314 Griswald Plaza, Erie, Pennsylvania, on
  Wednesday, August 31, 2005, commencing at 9:52 a.m.
5

6                              - - - -

7

   APPEARANCES:
8
        FOR THE PLAINTIFF, IRS:
9  Shannon L. Dickerson
   DEPARTMENT OF THE TREASURY INTERNAL REVENUE SERVICE
10 11510 Georgia Ave., RM. 305
   Wheaton, MD  20902
11 (202) 283-8064

12

13        FOR THE DEFENDANT, CATHERINE Y. PEI:
   Thomas W. Patton, Esq.
14 PUBLIC DEFENDERS OFFICE
   1001 State Street, Suite 1111
15 Erie, PA  16501
   (814) 455-8089
16

17

18

19

20

21

22

23

24

25

1                         * I N D E X *

2    Examination by Ms. Dickerson - - - - - - - - - -   4

3    Certificate of Court Reporter  - - - - - - - - -  25

4

5

6

7

8                    * INDEX OF EXHIBITS *

9                 (No Exhibits were marked.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    CATHERINE Y. PEI,

2                having been duly sworn,

3          was examined and testified as follows:

4                      - - - -

5                     EXAMINATION

6                      - - - -

7    BY MS. DICKERSON:

8    Q.    As you now, I'm Shannon Dickerson.  I'm the

9          revenue agent who's been working this case for

10         an awful long time here.  What we're here today

11         is to do a summons hearing based on the revised

12         order from the judge.

13              I'm going to ask you a number of

14         questions.  Decide to answer them or not answer

15         them.  The few first questions are just some

16         very general questions, you know.  Again

17         whether you answer them or not that's up to

18         you.  Starting off, what was your educational

19         background?

20   A.    I have a B.A. in International Affairs from

21         George Washington University, Washington, D.C.

22   Q.    What's your employment background?

23   A.    Secretarial, administrative assistant.

24   Q.    Where were you working during -- I know we're

25         talking about 1999 and 2000 as the tax years we

```
 1              have under audit -- what were you doing, were
 2              you working during those years or during your
 3              marriage to Mr. Bynum, were you working?
 4    A.        Primarily a homemaker.  I assisted with just
 5              basic secretarial duties.
 6    Q.        For his company?
 7    A.        Correct.
 8    Q.        Were you compensated for that?
 9                    MR. PATTON:  We'll not answer that on
10              the basis that her answers may incriminate her.
11    BY MS. DICKERSON:
12    Q.        Where did you live during 1999 and 2000?  I
13              know it's back.
14    A.        Let's see, 2000 --
15    Q.        The address on the returns is the --
16    A.        7517 Hawkins Creamery Road, Gaithersburg,
17              Maryland.
18    Q.        How long did you reside there?
19    A.        Approximately two years.
20    Q.        During those two years?
21    A.        I believe so.  Part of the address -- prior to
22              that was 425 Red Birch Road, Millersville,
23              Maryland.  I don't recall the zip code.
24    Q.        So that was prior to '99 that you can
25              approximate?
```

1    A.    I think.

2                    MR. PATTON:  To the best of your

3          memory.

4                    THE WITNESS:  Yes, to the best of my

5          memory those were the only two addresses.

6    BY MS. DICKERSON:

7    Q.    And how long were you married?

8    A.    Approximately six years, six and a half.

9          Excuse me, I'm sorry.  We were together about

10         six and a half years.  Married three years.

11   Q.    When did you get married?

12   A.    I have to think about this one.  We were

13         divorced 2001, so three years prior.

14   Q.    1998.  Do you recall approximately what your

15         monthly or annual income was in '99 and 2000?

16                   MR. PATTON:  She won't answer that.

17   BY MS. DICKERSON:

18   Q.    Do you recall what your monthly expenses were?

19                   MR. PATTON:  She won't answer that.

20   BY MS. DICKERSON:

21   Q.    Do you still wish to retain the services of

22         your power of attorney, Mr. Pressel, in

23         Maryland?

24                   MR. PATTON:  Could you explain that

25         to me, please?

1             MS. DICKERSON:  When we first began

2     examination she did sign a power of attorney to

3     have someone represent her.

4  BY MS. DICKERSON:

5  Q.    Oscar Pressel?

6  A.    Oscar is my ex-spouse, Mark Bynum's,

7     accountant.

8  Q.    Right.

9  A.    And he sent me the request since I was out of

10    State, and since I didn't deal with the taxes I

11    didn't know anything about it.

12           MR. PATTON:  And no, you don't want

13    to continue?

14           THE WITNESS:  No, I do not.

15           MS. DICKERSON:  Is there any way we

16    can get that in writing from you?  Normally

17    when you do revoke the power of attorney,

18    because we do have a signed power of attorney

19    on file for her, actually what you could do is

20    fill out another one too.

21         I think we can just check the box or

22    even a short letter stating she wishes to

23    revoke the power of attorney for him.  That

24    would be sufficient.

25           MR. PATTON:  Could you give me his

1          name again, please?

2                    MS. DICKERSON:  Oscar Pressel and --

3          O-s-c-a-r H. P-r-e-s-s-e-l.

4                    MR. PATTON:  Do you know if he's

5          still at that same address?

6                    MS. DICKERSON:  Yes, he is.

7    BY MS. DICKERSON:

8    Q.    So you haven't had any contact with him?

9    A.    None whatsoever.

10   Q.    Okay.

11                   MS. DICKERSON:  Do you wish to

12         discuss further the consent to extend the

13         Statute of Limitations, was that discussed any

14         further with her?

15                   MR. PATTON:  Yes, we discussed it,

16         and we are not going to extend the Statute of

17         Limitations.

18                   MS. DICKERSON:  Does she understand

19         her rights, the fact that if there was any

20         assessment made that if, for my reason, she

21         wishes to appeal that doesn't extend any time

22         period by not signing that?  I mean, not only

23         does it protect our interest but it also

24         protects her interest also.

25                   Basically what happens is if she

1   doesn't agree to sign it then we go further

2   with the examination based on the information

3   we have now and we have to issue a report based

4   on the facts and circumstances we have at this

5   point.  Just so you understand that.

6                MR. PATTON:  Yes, ma'am.

7                MS. DICKERSON:  Once that notice is

8   issued, the Notice of Deficiency, it gives a

9   90-day period of time for you to respond.  That

10  doesn't automatically extend a time period for

11  you to appeal.

12               MR. PATTON:  Okay.

13  BY MS. DICKERSON:

14  Q.   Do you recall who prepared your tax returns in

15       1999 and 2000?

16  A.   Mark took care of everything, so I'm assuming

17       it's Oscar Pressel.

18  Q.   Before signing the tax returns did you review

19       these returns, were they explained to you?

20  A.   No, I did not.  I was turned to the page of the

21       signature page, and I was directed where to

22       sign, and I signed it.

23  Q.   Have you ever prepared your own tax returns?

24  A.   Yes, I have, prior to the marriage and after

25       the marriage.

1   Q.    Okay.   What, if any, documents have you brought

2         today regarding the summons?

3                 MR. PATTON:   We won't answer that

4         question on the basis of self-incrimination.

5   BY MS. DICKERSON:

6   Q.    Do you still hold a Leadenhall credit card in

7         your name?

8                 MR. PATTON:   She will not answer that

9         question.

10  BY MS. DICKERSON:

11  Q.    Do you have it with you?

12                MR. PATTON:   She will not answer that

13        question.

14  BY MS. DICKERSON:

15  Q.    Was it destroyed or discarded?

16                MR. PATTON:   She will not answer that

17        question.

18  BY MS. DICKERSON:

19  Q.    How did you come to have a Mastercard credit

20        account with Leadenhall?

21                MR. PATTON:   We will not answer that

22        question.

23  BY MS. DICKERSON:

24  Q.    Did you set up that Mastercard personally?

25                MR. PATTON:   Will not answer that

1        question.

2    BY MS. DICKERSON:

3    Q.    Did you travel to the Bahamas to set that

4        account up?

5                MR. PATTON:  We will not answer that

6        question.

7    BY MS. DICKERSON:

8    Q.    What documents did you provide Leadenhall to

9        set the account up?

10               MR. PATTON:  Will not answer that

11       question.

12   BY MS. DICKERSON:

13   Q.    Were you required to provide a passport or any

14      form of identification?

15             MR. PATTON:  Will not answer that

16      question.

17   BY MS. DICKERSON:

18   Q.    Do you have a copy of the credit card

19      application?

20            MR. PATTON:  Will not answer that

21      question.

22   BY MS. DICKERSON:

23   Q.    Do you know whose name is on the credit card

24      application?

25            MR. PATTON:  Will not answer that

1           question.

2    BY MS. DICKERSON:

3    Q.     Did you use the Mastercard issued from

4           Leadenhall yourself during '99 or 2000?

5                    MR. PATTON:  Will not answer that

6           question.

7    BY MS. DICKERSON:

8    Q.     How were the charges on that account paid at

9           this time?

10                    MR. PATTON:  Will not answer that

11           question.

12    BY MS. DICKERSON:

13    Q.     Did you ever deal with anyone at Leadenhall?

14                    MR. PATTON:  Will not answer that

15           question.

16    BY MS. DICKERSON:

17    Q.     Did anyone provide you with information about

18           the Mastercard issued by Leadenhall?

19                    MR. PATTON:  Will not answer that

20           question.

21    BY MS. DICKERSON:

22    Q.     Did you question anyone about the card?

23                    MR. PATTON:  Will not answer that

24           question.

25

```
 1    BY MS. DICKERSON:

 2    Q.    Do you have or did you have at any time copies

 3          of any credit card statements?

 4                    MR. PATTON:  Will not answer that

 5          question.

 6    BY MS. DICKERSON:

 7    Q.    Have you taken any steps to reconstruct these

 8          records?

 9                    MR. PATTON:  Will not answer that

10          question.

11    BY MS. DICKERSON:

12    Q.    Who else had access to these accounts and

13          statements?

14                    MR. PATTON:  Will not answer that

15          question.

16    BY MS. DICKERSON:

17    Q.    Where were the credit cards mailed?

18                    MR. PATTON:  Will not answer that

19          question.

20    BY MS. DICKERSON:

21    Q.    Where were they addressed to?

22                    MR. PATTON:  Will not answer that

23          question.

24    BY MS. DICKERSON:

25    Q.    Did you review these credit card statements?
```

```
 1              MR. PATTON:  Will not answer that
 2         question.
 3    BY MS. DICKERSON:
 4    Q.    Were there any disputed charges or credits on
 5          these statements, and if so, did you resolve
 6          any of these issues?
 7              MR. PATTON:  Will not answer that
 8         question.
 9    BY MS. DICKERSON:
10    Q.    If the statements were not mailed how were
11          transactions and payments reconciled?
12              MR. PATTON:  Will not answer that
13         question.
14    BY MS. DICKERSON:
15    Q.    What arrangement, if any, did you have to use
16          the Mastercard issued by Leadenhall?
17              MR. PATTON:  Will not answer that
18         question.
19    BY MS. DICKERSON:
20    Q.    How did you know how much you could spend?
21              MR. PATTON:  Will not answer that
22         question.
23    BY MS. DICKERSON:
24    Q.    What was the limit on the credit card?
25              MR. PATTON:  Will not that question.
```

1  BY MS. DICKERSON:

2  Q.    Were you ever declined for insufficient credit

3        on the use of the card?

4                MR. PATTON:  Will not answer that

5        question.

6  BY MS. DICKERSON:

7  Q.    Were there ever any refunds or checks issued on

8        this account?

9                MR. PATTON:  Will not answer that

10        question.

11  BY MS. DICKERSON:

12  Q.    Did you have any communications with Leadenhall

13        regarding this credit card or bank account

14        attached to the credit card?

15                MR. PATTON:  Will not answer that

16        question.

17  BY MS. DICKERSON:

18  Q.    How much money was deposited to the bank

19        account that secured the card?

20                MR. PATTON:  Will not answer that

21        question.

22  BY MS. DICKERSON:

23  Q.    What was the source of these funds?

24                MR. PATTON:  Will not answer that

25        question.



1    BY MS. DICKERSON:

2    Q.    Who made the payments on this credit card

3          account?

4                      MR. PATTON:   Will not answer that

5          question.

6    BY MS. DICKERSON:

7    Q.    What was the source for the payment of these

8          funds?

9                      MR. PATTON:   Will not answer that

10         question.

11   BY MS. DICKERSON:

12   Q.    What actions have you done to obtain copies of

13         this information?

14                     MR. PATTON:   Will not answer that

15         question.

16   BY MS. DICKERSON:

17   Q.    What was the agreement with Leadenhall for

18         getting access to copies?

19                     MR. PATTON:   Will not answer that

20         question.

21   BY MS. DICKERSON:

22   Q.    Who at Leadenhall did you call if there was a

23         problem?

24                     MR. PATTON:   Will not answer that

25         question?

1   BY MS. DICKERSON:

2   Q.     How much money did you put in the security

3          account to open the credit card account?

4                    MR. PATTON:  Will not answer that

5          question.

6   BY MS. DICKERSON:

7   Q.     Who paid it, if there was any?

8                    MR. PATTON:  Will not answer that

9          question.

10  BY MS. DICKERSON:

11  Q.     Where did the funds come from?

12                   MR. PATTON:  Will not answer that

13         question.

14  BY MS. DICKERSON:

15  Q.     Where was the bank account maintained that was

16         attached to the foreign credit card?

17                   MR. PATTON:  Will not answer that

18         question.

19  BY MS. DICKERSON:

20  Q.     What is the account number?

21                   MR. PATTON:  Will not answer that

22         question.

23  BY MS. DICKERSON:

24  Q.     Who are the account holders?

25                   MR. PATTON:  Will not answer that

1            question.

2     BY MS. DICKERSON:

3     Q.     Were any of these accounts interest bearing?

4                     MR. PATTON:  Will not answer that

5            question.

6     BY MS. DICKERSON:

7     Q.     How are earnings, interest, dividends, profits

8            accounted for and are reported on your tax

9            return?

10                    MR. PATTON:  Can I have a second?

11           Can you repeat that, please?

12    BY MS. DICKERSON:

13    Q.     How are the earnings, whether interest,

14           dividends or profits accounted for and are

15           reported on the tax returns?

16                    MR. PATTON:  We will not answer that

17           question.                        --

18    BY MS. DICKERSON:

19    Q.     Do you have copies of any of these bank

20           statements?

21                    MR. PATTON:  We will not answer that

22           question.

23    BY MS. DICKERSON:

24    Q.     What efforts have you made to obtain any of

25           this information?

1              MR. PATTON:  Will not answer that

2          question.

3   BY MS. DICKERSON:

4   Q.     When was the account opened, and when was it

5          closed?

6              MR. PATTON:  Will not answer those

7          questions.

8   BY MS. DICKERSON:

9   Q.     Were any changes made to the account since

10          inception?

11              MR. PATTON:  Will not answer that

12          question.

13   BY MS. DICKERSON:

14   Q.     What transfers were made to or from this bank

15          account?

16              MR. PATTON:  Will not answer that

17          question.

18   BY MS. DICKERSON:

19   Q.     Are you aware of any filing requirements for

20          having an interest in a foreign bank account?

21              MR. PATTON:  Will not answer that

22          questions.

23   BY MS. DICKERSON:

24   Q.     Did any of the foreign accounts have an

25          aggregate balance of $10,000 or more in 1999 or

1          2000?

2                    MR. PATTON:  Will not answer that

3          question.

4    BY MS. DICKERSON:

5    Q.    Have you ever filed with a Treasury Department

6          a document entitled Report of Foreign Bank and

7          Financial Accounts?  It's a specific form, TD

8          F90-22.1?

9                    MR. PATTON:  Will not answer that

10         question.

11   BY MS. DICKERSON:

12   Q.    Did you receive any income from a nondomestic

13         source during '99 or 2000?

14                   MR. PATTON:  Will not answer that

15         question.

16   BY MS. DICKERSON:

17   Q.    Were there any other domestic sources of income

18         that have not yet been identified during this

19         examination in '99 or 2000?

20                   MR. PATTON:  Will not answer that

21         question.

22   BY MS. DICKERSON:

23   Q.    What, if any, was your involvement with Cash 4

24         Titles?

25                   MR. PATTON:  Hang on one second on

```
 1              that.
 2                      THE WITNESS:  None whatsoever.
 3      BY MS. DICKERSON:
 4      Q.    Was your ex-husband ever involved in any other
 5            similar activities to Cash 4 Titles that you
 6            are aware of?
 7      A.    I don't know, don't know.
 8      Q.    Okay.  When and how did you first hear about
 9            Cash 4 Titles?
10                      MR. PATTON:  We will not answer that
11            question.
12      BY MS. DICKERSON:
13      Q.    Was there any individual person connected to
14            this investment that you are aware of?
15      A.    (Witness shaking head.)
16      Q.    Okay.  Did you ever receive any monies or
17            proceeds from this investment?
18      A.    (Witness shaking head.)
19                      MR. PATTON:  We will not answer that
20            question.
21      BY MS. DICKERSON:
22      Q.    Are you aware of who your ex-husband's clients
23            were?
24                      MR. PATTON:  Will not answer that
25            question.
```

1   BY MS. DICKERSON:

2   Q.    Where did your ex-husband work during 1999 and

3        2000?

4   A.    He was self-employed.

5   Q.    Name of the company?

6   A.    It was either Bynum Insurance and Investment

7        Group or Maryland Retirement Services.  I don't

8        know if they both existed at the same time or

9        if one superseded another.

10  Q.    Do you maintain a passport?

11  A.    Yes.

12  Q.    Do you happen to have a copy of it, or is there

13       any way we can inspect that?  That was one of

14       the summons items.

15          MR. PATTON:  No, we will not answer

16       that and will not produce it for inspection.

17  BY MS. DICKERSON:

18  Q.    Did you travel out of the country any time

19       during '99 or 2000?

20          MR. PATTON:  Will not answer that

21       question.

22  BY MS. DICKERSON:

23  Q.    If so, where, when and what was the purpose?

24          MR. PATTON:  Will not answer that

25       question.

Pittsburgh, PA
412-261-2323  /  Greensburg, PA
724-853-7700  /  Erie, PA
814-453-5700

AKF

1   BY MS. DICKERSON:

2   Q.    If so, did you visit any banks, financial

3         advisors or other investment related

4         establishments while traveling?

5                 MR. PATTON:  Will not answer

6         question.

7   BY MS. DICKERSON:

8   Q.    Were you involved in any private banking?

9                 MR. PATTON:  Will not answer that

10        question.

11  BY MS. DICKERSON:

12  Q.    Do you have any questions about the examination

13        at this point in time?

14                MR. PATTON:  I don't.

15                THE WITNESS:  No.

16                MR. PATTON:  No.

17                MS. DICKERSON:  Well, that does

18        conclude the questions I needed to ask you.  I

19        assume from here what's going to happen is it's

20        going to have to be taken back to the judge.

21                MR. PATTON:  That's my understanding.

22                MS. DICKERSON:  So from there, I

23        don't know what legal process takes, you know,

24        takes presidence at that point.  That's, I

25        guess, out of my hands at this time.

1           MR. PATTON:  Okay.

2           MS. DICKERSON:  Okay.  So I guess one

3    way or another we'll be in contact, my guess is

4    through the Department of Justice will probably

5    be the person to be in contact with you.

6           MR. PATTON:  Yes.

7           MS. DICKERSON:  Do you have any

8    questions?

9           MR. PATTON:  No, ma'am.

10          MS. DICKERSON:  You have my number if

11   you need to contact me?

12          MR. PATTON:  Yes.

13                - - - -

14          (Whereupon, the proceedings were

15   concluded at 10:09 a.m.)

16                - - - -

17

18

19

20

21

22

23

24

25

1

2

3

4           R E P O R T E R ' S    C E R T I F I C A T E

5

6

7           I hereby certify that the transcript of the

8   proceedings and evidence contained herein are a true

9   and accurate transcription of my stenographic notes

10  taken by me at the time and place of the within

11  cause; that the transcription was reduced to printing

12  under my direction; and that this is a true and

13  correct transcript of the same.

14

15

16                                      September 19, 2005

    _____
17      Cynthia A. Hawley
           AKF REPORTERS, INC.

18

19

20

21

22

23

24

25        _____ Cynthia A. Hawley _____

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Cynthia A. Hawley, Notary Public
City of Beaver, PA
My Commission Expires June 30, 2009
Member, Pennsylvania Association of Notaries

Pittsburgh, PA          Erie, PA
412-261-2323            814-453-5700            *AKF*

CH89912.TXT                                    Page 1

| | | | |
|---|---|---|---|
| ---------- | 9:15; | 16:18 | annual 6:15 |
| ' | 12:4; | accordance | another |
| ---------- | 20:1,13, | 2:2 | 7:20; |
| ' 25:4 | 19; 22:3, | account | 22:9; 24:3 |
| '99 5:24; | 19 | 10:20; | answer |
| 6:15; | 2001 6:13 | 11:4,9; | 4:14,17; |
| 12:4; | 2005 | 12:8; | 5:9; 6:16, |
| 20:13,19; | 1:14.5; | 15:8,13, | 19; 10:3, |
| 22:19 | 2:4.5; | 19; 16:3; | 8,12,16, |
| ---------- | 25:16 | 17:3,15, | 21,25; |
| * | 202 2:11 | 20,24; | 11:5,10, |
| ---------- | 20902 | 19:4,9,15, | 15,20,25; |
| * 3:1,8 | 2:10.5 | 20 | 12:5,10, |
| ---------- | 25 3:3 | accountant | 14,19,23; |
| - | 283-8064 | 7:7 | 13:4,9,14, |
| ---------- | 2:11 | accounted | 18,22; |
| - 1:2,11, | ---------- | 18:8,14 | 14:1,7,12, |
| 13; 2:6; | 3 | accounts | 17,21; |
| 4:4,6; | ---------- | 13:12; | 15:4,9,15, |
| 24:13,16 | 305 2:10 | 18:3; | 20,24; |
| -vs- 1:6 | 31 1:14.5; | 19:24; | 16:4,9,14, |
| ---------- | 2:4.5 | 20:7 | 19,24; |
| 0 | ---------- | accurate | 17:4,8,12, |
| ---------- | 4 | 25:9 | 17,21,25; |
| 05-CV-141E | ---------- | Action 1:6 | 18:4,16, |
| 1:6.5 | 4 3:2; | actions | 21; 19:1, |
| ---------- | 20:23; | 16:12 | 6,11,16, |
| 1 | 21:5,9 | activities | 21; 20:2, |
| ---------- | 425 5:22 | 21:5 | 9,14,20; |
| 10,000 | 455-8089 | actually | 21:10,19, |
| 19:25 | 2:15.5 | 7:19 | 24; 22:15, |
| 1001 2:14.5 | ---------- | address | 20,24; |
| 10:00 1:15 | 7 | 5:15,21; | 23:5,9 |
| 10:09 24:15 | ---------- | 8:5 | answers |
| 1111 2:14.5 | 7517 5:16 | addressed | 5:10 |
| 11510 2:10 | ---------- | 13:21 | appeal |
| 1314 1:17; | 8 | addresses | 8:21; 9:11 |
| 2:4 | ---------- | 6:5 | APPEARANCES |
| 16501 2:15 | 814 2:15.5 | administra- | 2:7.5 |
| 19 25:16 | ---------- | tive 4:23 | application |
| 1998 6:14 | 9 | advisors | 11:19,24 |
| 1999 4:25; | ---------- | 23:3 | approximate |
| 5:12; | 90-day 9:9 | Affairs | 5:25 |
| 9:15; | 9:52 2:4.5 | 4:20 | approximat- |
| 19:25; | ---------- | agent 4:9 | ely 5:19; |
| 22:2 | A | aggregate | 6:8,14 |
| ---------- | ---------- | 19:25 | arrangement |
| 2 | a.m 1:15 | agree 9:1 | 14:15 |
| ---------- | 2:4.5; | agreement | assessment |

CH89912..TXT                                                        Page 2

assisted 5:4
assume 23:19
assuming 9:16
attached 15:14; 17:16
audit 5:1
August 1:14.5; 2:4.5
automatically 9:10
Ave. 2:10
aware 19:19; 21:6,14,22
awful 4:10

**B**

B.A. 4:20
back 5:13; 23:20
background 4:19,22
Bahamas 11:3
balance 19:25
bank 15:13, 18; 17:15; 18:19; 19:14,20; 20:6
banking 23:8
banks 23:2
based 4:11; 9:2,3
basic 5:5
Basically 8:25
basis 5:10; 10:4
bearing 18:3

best 6:2,4
Birch 5:22
both 22:8
box 7:21
brought 10:1
Bynum 5:3; 22:6
Bynum's 7:6

**C**

call 16:22
called 2:1.5
card 10:6; 11:18,23; 12:22; 13:3,25; 14:24; 15:3,13, 14,19; 16:2; 17:3,16
cards 13:17
care 9:16
case 4:9
Cash 20:23; 21:5,9
CATHERINE 1:7,12; 2:1,13; 4:1
cause 25:11
Certificate 3:3
certify 25:7
CH89912 1:21.5
changes 19:9
charges 12:8; 14:4
check 7:21
checks 15:7
circumstances 9:4
Civil 1:6;

closed 19:5
code 5:23
come 10:19; 17:11
commencing 2:4.5
Commonwealth 2:3.5
communications 15:12
company 5:6; 22:5
compensated 5:8
conclude 23:18
concluded 24:15
connected 21:13
consent 8:12
contact 8:8; 24:3, 5,11
contained 25:8
continue 7:13
copies 13:2; 16:12,18; 18:19
copy 11:18; 22:12
correct 5:7; 25:13
country 22:18
Creamery 5:16
credit 10:6,19; 11:18,23; 13:3,17, 25; 14:24; 15:2,13, 14; 16:2; 17:3,16

1:20.5; 2:2.5; 25:16.5

**D**

D.C 4:21
DATE 1:14.5
deal 7:10; 12:13
Decide 4:14
declined 15:2
Defendant 1:9; 2:13
DEFENDERS 2:14
Deficiency 9:8
DEPARTMENT 2:9.5; 20:5; 24:4
deposited 15:18
DEPOSITION 1:12; 2:1
destroyed 10:15
Dickerson 2:9; 3:2; 4:7,8; 5:11; 6:6, 17,20; 7:1,4,15; 8:2,6,7, 11,18; 9:7,13; 10:5,10, 14,18,23; 11:2,7,12, 17,22; 12:2,7,12, 16,21; 13:1,6,11, 16,20,24; 14:3,9,14, 19,23; 15:1,6,11, 17,22;

CH89912.TXT

| | | | |
|---|---|---|---|
| 14,19,23; | efforts | facts 9:4 | happen |
| 18:2,6,12, | 18:24 | Federal 2:2 | 22:12; |
| 18,23; | either 22:6 | few 4:15 | 23:19 |
| 19:3,8,13, | employment | file 7:19 | happens |
| 18,23; | 4:22 | filed 20:5 | 8:25 |
| 20:4,11, | entitled | filing | Hawkins |
| 16,22; | 20:6 | 19:19 | 5:16 |
| 21:3,12, | Erie | fill 7:20 | Hawley |
| 21; 22:1, | 1:17.5; | financial | 1:20.5; |
| 17,22; | 2:4,15 | 20:7; 23:2 | 2:3; |
| 23:1,7,11, | Esq 2:13.5 | first 4:15; | 25:16.5 |
| 17,22; | establishm- | 7:1; 21:8 | head 21:15, |
| 24:2,7,10 | ents 23:4 | follows 4:3 | 18 |
| directed | even 7:22 | foreign | hear 21:8 |
| 9:21 | everything | 17:16; | hearing |
| direction | 9:16 | 19:20,24; | 1:1; 4:11 |
| 25:12 | evidence | 20:6 | hereby 25:7 |
| discarded | 25:8 | form 11:14; | herein 25:8 |
| 10:15 | ex-husband | 20:7 | hold 10:6 |
| discuss | 21:4; 22:2 | funds | holders |
| 8:12 | ex-husband- | 15:23; | 17:24 |
| discussed | 's 21:22 | 16:8; | homemaker |
| 8:13,15 | ex-spouse | 17:11 | 5:4 |
| disputed | 7:6 | further | ---------- |
| 14:4 | examination | 8:12,14; | I |
| dividends | 2:2; 3:2; | 9:1 | ---------- |
| 18:7,14 | 4:5; 7:2; | ---------- | identifica- |
| divorced | 9:2; | G | tion 11:14 |
| 6:13 | 20:19; | ---------- | identified |
| document | 23:12 | Gaithersbu- | 20:18 |
| 20:6 | examined | rg 5:16 | INC 25:17 |
| documents | 4:3 | general | inception |
| 10:1; 11:8 | Excuse 6:9 | 4:16 | 19:10 |
| doing 5:1 | EXHIBITS | George 4:21 | income |
| domestic | 3:8,9.5 | Georgia | 6:15; |
| 20:17 | existed | 2:10 | 20:12,17 |
| done 16:12 | 22:8 | getting | incriminate |
| duly 4:2 | expenses | 16:18 | 5:10 |
| during | 6:18 | give 7:25 | INDEX 3:8 |
| 4:24; 5:2, | explain | gives 9:8 | individual |
| 12,20; | 6:24 | Griswald | 21:13 |
| 12:4; | explained | 1:17; 2:4 | information |
| 20:13,18; | 9:19 | Group 22:7 | 9:2; |
| 22:2,19 | extend | guess | 12:17; |
| duties 5:5 | 8:12,16, | 23:25; | 16:13; |
| ---------- | 21; 9:10 | 24:2,3 | 18:25 |
| E | ---------- | ---------- | inspect |
| ---------- | F | H | 22:13 |
| earnings | ---------- | ---------- | inspection |

CH89912.TXT                                                    Page 4

Insurance 22:6
interest 8:23,24; 18:3,7,13; 19:20
INTERNAL 2:9.5
Internatio- nal 4:20
investment 21:14,17; 22:6; 23:3
involved 21:4; 23:8
involvement 20:23
IRS 1:16.5, 19.5; 2:1.5,4, 8.5
issue 9:3
issued 9:8; 12:3,18; 14:16; 15:7
issues 14:6
items 22:14

----------- J -----------
judge 4:12; 23:20
Justice 24:4

----------- L -----------
Leadenhall 10:6,20; 11:8; 12:4,13, 18; 14:16; 15:12; 16:17,22
legal 23:23
letter 7:22
limit 14:24
Limitations

1:16.5
long 4:10; 5:18; 6:7
----------- M -----------
ma'am 9:6; 24:9
made 8:20; 16:2; 18:24; 19:9,14
mailed 13:17; 14:10
maintain 22:10
maintained 17:15
Mark 7:6; 9:16
marked 3:9.5
marriage 5:3; 9:24, 25
married 6:7,10,11
Maryland 5:17,23; 6:23; 22:7
Mastercard 10:19,24; 12:3,18; 14:16
MD 2:10.5
mean 8:22
memory 6:3, 5
Millersvil- le 5:22
money 15:18; 17:2
monies 21:16
monthly 6:15,18
Ms. 3:2;

8:2,6,7, 11,18; 9:7,13; 10:5,10, 14,18,23; 11:2,7,12, 17,22; 12:2,7,12, 16,21; 13:1,6,11, 16,20,24; 14:3,9,14, 19,23; 15:1,6,11, 17,22; 16:1,6,11, 16,21; 17:1,6,10, 14,19,23; 18:2,6,12, 18,23; 19:3,8,13, 18,23; 20:4,11, 16,22; 21:3,12, 21; 22:1, 17,22; 23:1,7,11, 17,22; 24:2,7,10
much 14:20; 15:18; 17:2
----------- N -----------
name 8:1; 10:7; 11:23; 22:5
need 24:11
needed 23:18
No. 1:6.5, 21.5
nondomestic 20:12
None 8:9;

Notary 1:21; 2:3
notes 25:9
notice 9:7, 8
number 4:13; 17:20; 24:10
----------- O -----------
O-s-c-a-r 8:3
obtain 16:12; 18:24
Office 1:16.5; 2:14
offices 2:3.5
Okay 8:10; 9:12; 10:1; 21:8,16; 24:1,2
Once 9:7
one 6:12; 7:20; — 20:25; 22:9,13; 24:2
only 6:5; 8:22
open 17:3
opened 19:4
order 4:12
Oscar 7:5; 6; 8:2; 9:17
other 20:17; 21:4; 23:3
out 7:9,20; 22:18; 23:25
own 9:23
-----------

CH89912.TXT

e-1 8:3
Pa 1:7,
17.5; 2:15
page 9:20,
21
paid 12:8;
17:7
Part 5:21
passport
11:13;
22:10
Patton
2:13.5;
5:9; 6:2,
16,19,24;
7:12,25;
8:4,15;
9:6,12;
10:3,8,12,
16,21,25;
11:5,10,
15,20,25;
12:5,10,
14,19,23;
13:4,9,14,
18,22;
14:1,7,12,
17,21,25;
15:4,9,15,
20,24;
16:4,9,14,
19,24;
17:4,8,12,
17,21,25;
18:4,10,
16,21;
19:1,6,11,
16,21;
20:2,9,14,
20,25;
21:10,19,
24; 22:15,
20,24;
23:5,9,14,
16,21;
24:1,6,9,
12
payment
16:7

PEI 1:7,12;
2:1,13;
4:1
Pennsylvan-
ia 2:3.5,4
period
8:22; 9:9,
10
person
21:13;
24:5
personally
10:24
place 25:10
Plaintiff
1:5,19;
2:1.5,8.5
Plaza 1:17;
2:4
please
6:25; 8:1;
18:11
point 9:5;
23:13,24
power 6:22;
7:2,17,18,
23
prepared
9:14,23
presidence
23:24
Pressel
6:22; 7:5;
8:2; 9:17
Primarily
5:4
printing
25:11
prior 5:21,
24; 6:13;
9:24
private
23:8
probably
24:4
problem
16:23
Procedure
2:2.5

proceeds
21:17
process
23:23
produce
22:16
profits
18:7,14
protect
8:23
protects
8:24
provide
11:8,13;
12:17
Public
1:21; 2:3,
14
purpose
22:23
put 17:2
-----------
Q
-----------
question
10:4,9,13,
17,22;
11:1,6,11,
16,21;
12:1,6,11,
15,20,22,
24; 13:5,
10,15,19,
23; 14:2,
8,13,18,
22,25;
15:5,10,
16,21,25;
16:5,10,
15,20,25;
17:5,9,13,
18,22;
18:1,5,17,
22; 19:2,
12,17;
20:3,10,
15,21;
21:11,20,
25; 22:21,

4:14,15,
16; 19:7,
22; 23:12,
18; 24:8
-----------
R
-----------
reason 8:20
recall
5:23;
6:14,18;
9:14
receive
20:12;
21:16
reconciled
14:11
reconstruct
13:7
records
13:8
Red 5:22
reduced
25:11
Reference
1:21.5
refunds
15:7
regarding
10:2; —
15:13
related
23:3
repeat
18:11
report 9:3;
20:6
reported
1:20.5;
18:8,15
Reporter
2:3; 3:3
REPORTERS
25:17
represent
7:3
request 7:9
required
11:13

CH89912.TXT                                                      Page 6

| | | | |
|---|---|---|---|
| resolve | services | Street | travel |
| 14:5 | 6:21; 22:7 | 2:14.5 | 11:3; |
| respond 9:9 | set 10:24; | sufficient | 22:18 |
| retain 6:21 | 11:3,9 | 7:24 | traveling |
| Retirement | shaking | Suite | 23:4 |
| 22:7 | 21:15,18 | 2:14.5 | TREASURY |
| return 18:9 | Shannon | summons | 2:9.5; |
| returns | 2:9; 4:8 | 1:1; 4:11; | 20:5 |
| 5:15; | short 7:22 | 10:2; | true 25:8, |
| 9:14,18, | sign 7:2; | 22:14 | 12 |
| 19,23; | 9:1,22 | superseded | turned 9:20 |
| 18:15 | signature | 22:9 | two 5:19, |
| revenue | 9:21 | sworn 4:2 | 20; 6:5 |
| 2:9.5; 4:9 | signed | ----------- | ----------- |
| review | 7:18; 9:22 | ----------- | U |
| 9:18; | signing | T | ----------- |
| 13:25 | 8:22; 9:18 | ----------- | under 5:1; |
| revised | similar | tax 4:25; | 25:12 |
| 4:11 | 21:5 | 9:14,18, | understand |
| revoke | since 7:9, | 23; 18:8, | 8:18; 9:5 |
| 7:17,23 | 10; 19:9 | 15 | understand- |
| rights 8:19 | six 6:8,10 | taxes 7:10 | ing 23:21 |
| RM. 2:10 | someone 7:3 | TD 20:7 | UNITED 1:3 |
| Road 5:16, | sorry 6:9 | testified | University |
| 22 | source | 4:3 | 4:21 |
| Rules 2:2 | 15:23; | Thomas | up 4:17; |
| ----------- | 16:7; | 2:13.5 | 10:24; |
| S | 20:13 | three 6:10, | 11:4,9 |
| ----------- | sources | 13 | USDC 1:7 |
| same 8:5; | 20:17 | time 4:10; | ----------- |
| 22:8; | specific | 8:21; 9:9, | V |
| 25:13 | 20:7 | 10; 12:9; | ----------- |
| second | spend 14:20 | 13:2; | visit 23:2 |
| 18:10; | Starting | 22:8,18; | ----------- |
| 20:25 | 4:18 | 23:13,25; | W |
| secretarial | State | 25:10 | ----------- |
| 4:23; 5:5 | 2:14.5; | Titles | W.D. 1:7 |
| secured | 7:10 | 20:24; | Washington |
| 15:19 | statements | 21:5,9 | 4:21 |
| security | 13:3,13, | today 4:10; | way 7:15; |
| 17:2 | 25; 14:5, | 10:2 | 22:13; |
| see 5:14 | 10; 18:20 | together | 24:3 |
| self-emplo- | STATES 1:3 | 6:9 | Wednesday |
| yed 22:4 | stating | took 9:16 | 1:15; |
| self-incri- | 7:22 | transactio- | 2:4.5 |
| mination | Statute | ns 14:11 | whatsoever |
| 10:4 | 8:13,16 | transcript | 8:9; 21:2 |
| sent 7:9 | stenograph- | 25:7,13 | Wheaton |
| September | ic 25:9 | transcript- | 2:10.5 |
| | | ion 25:9, | |

CH89912.TXT                                    Page 7

```
|  4:17;       |  6:8,10,13  |             |             |
|  18:13       | yourself    |             |             |
| who's 4:9    |  12:4       |             |             |
| will 10:8,   | ----------- |             |             |
|  12,16,21,   |      Z      |             |             |
|  25; 11:5,   | ----------- |             |             |
|  10,15,20,   | zip 5:23    |             |             |
|  25; 12:5,   | ----------- |             |             |
|  10,14,19,   |      _      |             |             |
|  23; 13:4,   | ----------- |             |             |
|  9,14,18,    | _____ - |           |             |
|  22; 14:1,   | _____ - |             |             |
|  7,12,17,    | _____ - |             |             |
|  21,25;      | ____ 25:16  |             |             |
|  15:4,9,15,  |             |             |             |
|  20,24;      |             |             |             |
|  16:4,9,14,  |             |             |             |
|  19,24;      |             |             |             |
|  17:4,8,12,  |             |             |             |
|  17,21,25;   |             |             |             |
|  18:4,16,    |             |             |             |
|  21; 19:1,   |             |             |             |
|  6,11,16,    |             |             |             |
|  21; 20:2,   |             |             |             |
|  9,14,20;    |             |             |             |
|  21:10,19,   |             |             |             |
|  24; 22:15,  |             |             |             |
|  16,20,24;   |             |             |             |
|  23:5,9;     |             |             |             |
|  24:4        |             |             |       -     |
| wish 6:21;   |             |             |             |
|  8:11        |             |             |             |
| wishes       |             |             |             |
|  7:22; 8:21  |             |             |             |
| within       |             |             |             |
|  25:10       |             |             |             |
| witness      |             |             |             |
|  2:1.5;      |             |             |             |
|  6:4; 7:14;  |             |             |             |
|  21:2,15,    |             |             |             |
|  18; 23:15   |             |             |             |
| work 22:2    |             |             |             |
| working      |             |             |             |
|  4:9,24;     |             |             |             |
|  5:2,3       |             |             |             |
| writing      |             |             |             |
|  7:16        |             |             |             |
| ----------- |             |             |             |
|      Y       |             |             |             |
```